UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY ANNUITY FUND, TRUSTEES OF THE TILE LAYERS LOCAL UNION 52 PENSION FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY RETIREE WELFARE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY VACATION FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY SUPPLEMENTAL FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY PROMOTIONAL FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY TRAINING FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY BUILDING FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY DEFENSE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY LOCAL POLITICAL ACTION COMMITTEE, TRUSTEES OF THE MARBLE INDUSTRY WELFARE FUND, TRUSTEES OF THE MARBLE INDUSTRY RETIREMENT FUND, TRUSTEES OF THE MARBLE INDUSTRY PENSION FUND, TRUSTEES OF THE MARBLE INDUSTRY VACATION FUND, TRUSTEES OF THE MARBLE INDUSTRY SUPPLEMENTAL FUND, TRUSTEES OF THE MARBLE INDUSTRY ANNUITY FUND, TRUSTEES OF THE MARBLE INDUSTRY PROMOTION FUND, TRUSTEES OF THE MARBLE INDUSTRY TRAINING FUND, TRUSTEES OF THE MARBLE INDUSTRY BUILDING FUND, TRUSTEES OF THE MARBLE INDUSTRY DEFENSE FUND, TRUSTEES OF THE MARBLE INDUSTRY POLITICAL ACTION COMMITTEE, TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, THE INTERNATIONAL MASONRY INSTITUTE, AND THE TRUSTEES OF THE BRICKLAYERS AND ALLIED CRAFTWORKERS POLITICAL ACTION COMMITTEE,

Plaintiffs,

-against-

REPORT AND RECOMMENDATION

No. 25-CV-5217-FB-JRC

STONEAGE LLC,

Defendant.

---------------------------------------------------------------

JAMES R. CHO, United States Magistrate Judge:

Plaintiffs Trustees of the Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, and Tile Layers Local Union 52 Pension Fund (collectively, the "Local 7 Tile Benefit Funds"), Trustees of the Local 7 Tile Industry Retiree Welfare Fund, Local 7 Tile Industry Vacation Fund, Local 7 Tile Industry Supplemental Fund, Local 7 Tile Industry Promotional Fund, Local 7 Tile Industry Training Fund, Local 7 Tile Industry Building Fund, Local 7 Tile Industry Defense Fund, and Local 7 Tile Industry Local Political Action Committee, (collectively, the "Local 7 Tile LMRA Funds," together with the Local 7 Tile Benefit Funds, hereinafter referred to as the "Tile Funds"), Trustees of the Marble Industry Welfare Fund, Marble Industry Retirement Fund, Marble Industry Pension Fund, Marble Industry Annuity Fund and Marble Industry Training Fund (the "Local 7 Marble Benefit Funds"), Trustees of the Marble Industry Vacation Fund, Marble Industry Supplemental Fund, Marble Industry Promotion Fund, Marble Industry Building Fund, Trustees of the Marble Industry Defense Fund, and Marble Industry Political Action Committee (collectively, the "Local 7 Marble LMRA Funds," together with the Local 7 Marble Benefit Funds as the "Marble Funds") (the Tile Funds and the Marble Funds are referenced collectively as the "Local Funds"), Trustees of the Bricklayers & Trowel Trades International Pension Fund (the "IPF"), International Masonry Institute ("IMI") and Trustees of the Bricklayers and Allied Craftworkers Political Action Committee ("BAC PAC," together with IMI, the "International LMRA Funds") (the IPF and the International LMRA Funds are referenced collectively as the "International Funds" and the Local

Funds and International Funds are together referred to as the "Funds" or "plaintiffs"), bring this action against defendant StoneAge LLC ("defendant" or "StoneAge") pursuant to the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145. Compl. ¶ 1, Dkt. 1.

Plaintiffs seek to recover delinquent employer contributions, union assessments, and dues check-offs from defendant, as well as late payment interest, accrued interest, liquidated damages, audit costs, attorneys' fees and costs. Compl. ¶¶ 49, 57,[1] Wherefore Clause; *see also* Mem. of Law in Supp. of Pls.' Mot. for Default J. ("Pls.' Mem.") at 19-20, Dkt. 17. Upon plaintiffs' application and in light of defendant's failure to appear in or otherwise defend this action, the Clerk of the Court entered defendant's default on October 22, 2025. Clerk's Entry of Default, Dkt. 10. Plaintiffs now move for default judgment against defendant. *See generally* Mot. for Default J., Dkt. 12.

Currently pending before this Court, on a referral from the Honorable Frederic Block, is plaintiffs' motion for default judgment. *See* Order Referring Mot. dated Dec. 18, 2025. For the reasons set forth below, this Court respectfully recommends granting, in large part, plaintiffs' motion for default judgment as set forth below.

## I. Relevant Factual Background

The following facts are drawn from plaintiffs' Complaint and declarations in support of plaintiffs' motion (Dkts. 1, 13-16), and are accepted as true for purposes of adjudicating this motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

Plaintiffs include Trustees of the Local 7 Tile Benefit Funds, the Trustees of the Local 7 Marble Benefit Funds, and the Trustees of the IPF, which are employee benefit plans within the

---

[1] In the Complaint, paragraphs 50 through 57 are re-numbered as paragraphs 11 through 18.

meaning of Section 3(3) of ERISA. Compl. ¶¶ 4, 6, 9. Plaintiffs also include Trustees of the Local 7 Tile LMRA Funds, the Local 7 Marble LMRA Funds, and the International LMRA Funds, which are multiemployer labor-management trust funds organized and operated in accordance with Section 302(c) of the LMRA. Compl. ¶¶ 5, 7, 10. Plaintiff Trustees are fiduciaries of the Funds within the meaning of 29 U.S.C. § 1002(21)(A). *Id.* ¶¶ 4, 6, 9. Defendant is a domestic limited liability company, organized under the laws of the State of New York, engaged in the construction industry. *See id.* ¶ 13.

At all times relevant to this action, StoneAge agreed to be bound to a collective bargaining agreement (the "Tile CBA") with the Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the "Tile Union"), in effect from June 8, 2009 through June 2, 2013. *See* Compl. ¶ 21; Decl. of William Hill ("Hill Decl.") ¶ 6, Dkt. 13; Tile CBA, Dkt. 13-1. Pursuant to the Tile CBA, defendant was required to "remit benefit contributions to the Tile Funds as third-party beneficiaries of the Tile CBA, including contributions for related entities on whose behalf the Tile Funds serve as collection agents . . . . in connection with all work performed within the trade and geographical jurisdiction of the Tile Union ('Tile Covered Work')." Compl. ¶ 22; Hill Decl. ¶ 9. The Tile CBA sets forth the rate schedules for the required contributions and dues check-offs. Compl. ¶ 23; Rate Schedules, Dkt. 13-3. The Tile CBA incorporates the Tile Funds' policies for the collection of benefit contributions. Compl. ¶ 22; Hill Decl. ¶¶ 15-16; Tile CBA, Art. IX, § 3(Q). The Tile CBA and the Collection Policy authorize the Tile Funds to conduct audits of signatory employers to ensure their compliance with their contractual obligations. *See* Compl. ¶ 34; Tile CBA, Art. IX, § 3(G); Joint Policy for Collection of Delinquent Fringe Benefit Contributions ("Tile Collection Policy"), Art. IV, Dkt. 13-6. The Tile CBA further provides that

it would "automatically renew itself and continue in full force and effect from year to year unless written notice of election to terminate or modify any provision of this Agreement is given by one (1) party . . . at least three (3) months prior to the expiration of this Agreement." Hill Decl. ¶ 7; Tile CBA at 53. Neither defendant nor the Tile Union has provided notice of any election to terminate or modify the CBA. Hill Decl. ¶ 8. Accordingly, the Tile CBA remains in effect and defendant remains bound by it.

Under the Tile CBA and the Tile Collection Policy, if the Tile Funds bring legal action to collect amounts owed, the Tile Funds are entitled to recover the unpaid contributions, interest, liquidated damages and the costs of collection, including attorneys' fees and audit costs. Compl. ¶ 26; Tile CBA, Art. IX, §§ 3(L), 5(G); Tile Collection Policy, Art. II, § 5. The Tile Collection Policy further provides that interest on delinquencies are charged at a rate of ten percent per annum to the Local Funds and fifteen percent per annum to the International Funds, and that liquidated damages are charged at a rate of 20 percent of unpaid contributions. *See* Tile Collection Policy, Art. II, § 5; Compl. ¶ 26.

Similarly, at all times relevant to this action, StoneAge agreed to be bound to a collective bargaining agreement (the "Marble CBA") with the Marble Carvers, Cutters and Setters, Local Union No. 7 of the International Union of Bricklayers and Allied Craftsmen and the Compact Labor Club of Marble Workers, Riggers, Crane and Derrickmen of New York and Vicinity, Local No. 7 of the International Union of Bricklayers and Allied Craftsmen (the "Marble Union"), originally in effect from July 1, 2009 through June 30, 2013. Compl. ¶ 27; Hill Decl. ¶ 11; Marble CBA, Dkt. 13-4. Pursuant to the Marble CBA, defendant was required to "remit benefit contributions to the Marble Funds as third-party beneficiaries of the Marble CBA, including contributions for related entities on whose behalf the Marble Funds serve as collection

agents . . . in connection with all work performed within the trade and geographical jurisdiction of the Marble Union ('Marble Covered Work')." Compl. ¶ 28; Decl. of Matthew Guy ("Guy Decl.") ¶ 6, Dkt. 14. The Marble CBA incorporates the Marble Funds' policies for the collection of benefit contributions. Compl. ¶ 28. The Marble CBA provides that "[t]his Agreement and any amendments hereto shall automatically renew itself and continue in full force and effect from year to year unless written notice of election to terminate or modify any provision of this Agreement is given by one party . . . ." *See* Hill Decl. ¶ 12; Marble CBA, Art. XXVI. To date, neither the Marble Union nor StoneAge ever provided written notice of their intent to terminate the Marble CBA. Hill Decl. ¶ 13. Accordingly, at all relevant times, StoneAge has been a party to the Marble CBA with the Marble Union. *Id.*

The Marble CBA and the "Marble Industry Trust Funds Collection Policy and Procedures" ("Marble Collection Policy"), Dkt. 24, permit the Marble Funds to conduct audits to ensure compliance with an employer's contribution obligations. *See* Marble CBA, Art. XX(6); Marble Collection Policy, Dkt. 24 (*see also* Dkt. 14-2). Under the Marble CBA and the Marble Collection Policy, if the Marble Funds bring legal action to collect amounts owed, the Marble Funds are entitled to recover the unpaid contributions, interest on delinquencies at a rate of 10 percent per annum, liquidated damages of 20 percent of unpaid contributions, and the costs of collection, including attorneys' fees and audit costs. *See* Marble CBA, Art. XX(6); Marble Collection Policy at 5-6; Guy Decl. ¶ 10. In addition, the Marble Collection Policy provides that for late payments, "[i]nterest will accrue at the rate of three percent (3%) plus prime, not to exceed ten percent (10%) per annum." Marble Collection Policy at 3; *see* Compl. ¶ 33.

### A. Audit Findings

Pursuant to the Tile Collection Policy and the Marble Collection Policy (referred to

collectively as the "Collection Policies"), and the CBAs, in 2025, the Funds' auditors requested that defendant make available certain records for the purpose of conducting a payroll audit for the period of January 1, 2017 through December 31, 2024. *See* Decl. of Michael Sarosy ("Sarosy Decl.") ¶¶ 14, 25, Dkt. 15; Compl. ¶ 34. Because defendants' cash disbursement records reflected payments with no payee information, on May 19, 2025, the auditors requested that defendant provide documentation identifying the payees and the purpose of the disbursements. Sarosy Decl. ¶¶ 15-16, 27. To date, defendant has failed to provide the requested information or any additional payroll records. *Id.* ¶¶ 18, 29.

On August 12, 2025, the auditors notified defendant that due to its failure to respond to prior correspondence, the preliminary Tile and Marble Audit reports were deemed final. *Id.* ¶¶ 19, 30. Due to the absence of payroll records provided, the auditors were required to rely largely on cash disbursement records. *Id.* ¶¶ 20, 31. Based on those records, the auditors determined that certain payments were attributable to covered work and calculated fringe benefit contributions based on estimated hours at the applicable contractual wage rate. *Id.* ¶¶ 21, 33.

The Funds' auditors determined that for the period January 1, 2017 through December 31, 2024, defendant failed to remit benefit contributions to the Tile Funds in the amount of $6,831,902.67. *Id.* ¶ 22; Compl. ¶ 35. In total, the auditors calculated that defendant owed the Tile Funds unpaid contributions of $6,831,902.67 for the period January 1, 2017 through December 31, 2024; interest in the amount of $1,934,976.99; liquidated damages of $1,203,078.60, and audit costs of $6,400.00. Sarosy Decl. ¶ 22; Revised Audit Report, Dkt. 20-1.[2] To date, defendant has not paid the amounts found to be due despite plaintiffs' demand. *See*

[2] Plaintiffs reduced their request of interest from $2,160,579.79 for the Tile Funds. *See* Letter in support of the motion for default judgment, Dkt. 20; *see also* [Original] Proposed Judgment, Dkt. 16-9.

Hill Decl. ¶ 22; Compl. ¶ 37.

The Funds' auditors further determined that for the period January 1, 2017 through December 31, 2024, defendant failed to remit benefit contributions to the Marble Funds in the amount of $149,042.10. Sarosy Decl. ¶ 33. In total, the auditors calculated that defendant owed the Tile Funds unpaid contributions of $149,042.10 for the period January 1, 2017 through December 31, 2024; interest in the amount of $76,234.13; and audit costs of $6,400.00. *Id.* ¶¶ 33-35; Revised Audit Report, Dkt. 20-1.[3] To date, defendant has not paid the amounts found to be due despite plaintiffs' demand. *See* Guy Decl. ¶ 14; Compl. ¶ 37; Hill Decl. ¶ 22.

In addition, the Marble Funds determined that StoneAge remitted contributions for the periods January 1, 2023 through December 31, 2023 and January 1, 2024 through December 31, 2024, beyond their respective due dates as provided in the Marble CBA and the Marble Collection Policy. Compl. ¶¶ 41-42; Guy Decl. ¶¶ 18-19; Dkts. 14-4, 14-5.[4]

## II. Procedural Background

On September 17, 2025, plaintiffs commenced this action. *See generally* Compl. On September 22, 2025, plaintiffs served the Summons and Complaint upon defendant, by serving the New York State Secretary of State as designated agent pursuant to Section 303 of the Limited Liability Company Law. Summons Returned Executed, Dkt. 7. Defendant failed to file an answer or otherwise appear in this matter, and on October 22, 2025, the Clerk of the Court entered a Certificate of Default in this matter noting the default of the defendant. Clerk's Entry of Default, Dkt. 10.

[3] Plaintiffs reduced their request of interest from $99,367.00 to the Marble Funds. *See* Letter in support of the motion for default judgment, Dkt. 20; *see also* [Original] Proposed Judgment, Dkt. 16-9.

[4] The Complaint contains a typographical error stating that the late payments for 2024 were made to the Tile Funds, rather than the Marble Funds. *See* Pl.'s Mem. at 15 n.2; Compl. ¶ 41.

On December 18, 2025, plaintiffs moved for a default judgment. Dkt. 12. Plaintiffs request a default judgment against defendant StoneAge as follows: (1) awarding the Tile Funds: (a) delinquent contributions of $6,831,902.67 for unpaid contributions for the period January 1, 2017 through December 31, 2024; (b) interest thereon of $1,934,976.99; (c) liquidated damages in the amount of $1,203,078.60; and (d) audit costs of $6,400.00; (2) awarding the Marble Funds: (a) delinquent contributions of $149,042.10 for unpaid contributions for the period January 1, 2017 through December 31, 2024; (b) interest thereon of $76,234.13; (c) liquidated damages in the amount of $29,808.42; (d) audit costs of $6,400.00; (e) late payment interest in the amount of $9,270.05 for the periods January 1, 2023 through December 31, 2023 and January 1, 2024 through December 31, 2024; (3) awarding additional interest on the delinquent contributions for the period January 1, 2017 through December 31, 2024, calculated at the rate set forth in the CBA and Collection Policies from August 13, 2025 through the date of judgment; (4) awarding attorneys' fees and costs of $6,871.29; and (5) awarding post-judgment interest calculated at the statutory rate. *See* [Proposed] Default J., Dkt. 20-2.

## III. Default Judgment

Under Rule 55 of the Federal Rules of Civil Procedure, there are two steps to entering a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. *See id.*; Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). This first step is nondiscretionary. *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017). Second, after the Clerk of the Court enters a defendant's default, if that party fails to

appear or otherwise move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a default judgment. *See* Fed R. Civ. P. 55(a), (b)(2).

Here, on October 22, 2025, the Clerk of the Court entered a certificate of default against defendant. *See* Dkt. 10. To date, defendant has not appeared or moved to vacate the entry of default.

"Default judgments are generally disfavored and are reserved for rare occasions." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil*, 10 F.3d at 96 (internal quotation marks omitted)). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id*. Accordingly, plaintiffs are not entitled to a default judgment as a matter of right simply because defendant is in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

Once the Clerk enters a certificate of default, the defendant is deemed to have admitted the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citations omitted). A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to

uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-3259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (citations and internal quotation marks omitted). In addition, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Laby's, Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations and citation omitted). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (quoting *Enron Oil*, 10 F.3d at 95); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

Defendant did not respond to the Complaint despite proper service. Plaintiffs filed affidavits confirming service of the motion for default judgment and this Court's order scheduling a hearing on the motion. *See* Dkts. 18, 22, 23. Defendant has nonetheless failed to respond to plaintiffs' motion for default judgment or otherwise to appear in this action. Accordingly, the Court recommends finding that the failure by defendant to answer or otherwise respond to the Complaint constitutes an admission of the factual allegations therein. The Court now assesses whether those facts establish the defaulting defendant's liability.

## IV. Liability Under ERISA and the LMRA

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," a plaintiff may apply to the court for a default judgment. *See* Fed. R.

Civ. P. 55(a), (b)(2). When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("prior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations omitted).

Plaintiffs' Complaint establishes defendant's liability under ERISA and the LMRA. Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. "ERISA vests the court with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." *Trs. of the Local 7 Tile Indus. Welfare Fund v. City Tile, Inc.*, No. 10-CV-322, 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), *report and recommendation adopted*, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011); *see* 29 U.S.C. § 1132(a)(3).

Here, plaintiffs allege that defendant is an "employer," and that the plaintiff trustees are "fiduciaries" and "employer and employee trustees of multiemployer labor-management trust funds," and "employee benefit plans" under ERISA. Compl. ¶¶ 4, 6, 9, 13; 29 U.S.C. § 1002(3), 21(A), (37). Plaintiffs further allege that defendant was obligated to make contributions to plaintiffs pursuant to collective bargaining agreements and that defendant failed to make the

required contributions or pay the delinquencies revealed by the audits. *See id.* at ¶¶ 22-40. These factual allegations are sufficient to establish defendant's liability under ERISA for the unpaid contributions. *See Trs. of Loc. 7 Tile Indus. Welfare Fund v. Top Stone & Tile Inc.*, No. 24-CV-7567, 2025 WL 3461041, at *6 (E.D.N.Y. Aug. 15, 2025), *report and recommendation adopted*, 2026 WL 609388 (E.D.N.Y. Mar. 4, 2026); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Cape Mount Heavy Constr. & Assocs., LLC*, No. 22-CV-5050, 2023 WL 5830338, at *4 (E.D.N.Y. July 31, 2023), *report and recommendation adopted*, 2023 WL 5287218 (E.D.N.Y. Aug. 17, 2023); *Trs. of Local 7 Tile Indus. Welfare Fund v. All Flooring Sols., LLC*, No. 19-CV-126, 2020 WL 9814088, at *4 (E.D.N.Y. Feb. 12, 2020).

The Court's conclusion that plaintiffs have sufficiently stated a claim under ERISA applies solely to benefit contributions owed to the Local 7 Tile Benefit Funds, the Local 7 Marble Benefit Funds, and the IPF. Plaintiffs also seek to collect deficiencies for other entities that they have not alleged are covered by ERISA: the Local 7 Tile LMRA Funds, the Local 7 Marble LMRA Funds, and the International LMRA Funds. Therefore, any liability as to those entities must be under the LMRA.

Section 301(a) of the LMRA provides a federal cause of action for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce[.]" 29 U.S.C. § 185(a). The LMRA "permits a union to sue an employer in federal court for breach of a collective bargaining agreement" and recover "'non-ERISA' sums such as union dues." *Cement & Concrete Workers Dist. Council Welfare Fund v. Superior Gunite*, 742 F. Supp. 3d 309, 315 (E.D.N.Y. 2024). Plaintiffs are "employer and employee trustees of multiemployer labor-management trust funds" under the LMRA; the Unions are labor organizations as defined in Section 2 of the LMRA; and defendant is "an employer in an industry

affecting commerce within the meaning of section 501 of the LMRA."[5] Compl. ¶¶ 5, 7, 10; *see*

---

[5] Here, plaintiffs seek to recover unpaid union dues and assessments even though the Union is not a party to the action. *See* Revised Audit Reports, Dkt. 20-1. Generally, the designation of plaintiff-trustees as collection agent for the Union would not confer standing on plaintiffs to bring claims on a non-party's behalf. *See Trs. of Loc. 7 Tile Indus. Welfare Fund v. Castle Stone and Tile, Inc.*, No. 17-CV-3187, 2022 WL 2063267, at *16 (E.D.N.Y. June 8, 2022); *Trs. of Loc. 7 Tile Indus. Welfare Fund v. AM Tile Specialty Constr.*, No. 19-CV-1809, 2020 WL 7034025, at *7 (E.D.N.Y. Sept. 23, 2020), *report and recommendation adopted*, 2020 WL 7021646 (E.D.N.Y. Nov. 30, 2020). However, under the circumstances, where the submission of union dues to the Union and benefit contributions to the benefit funds were made pursuant to a "one-check" system as provided in the applicable collective bargaining agreements, courts in this District have permitted plaintiff-trustees to recover amounts owed to the Union. *See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Toros Bros. Constr. Corp.*, No. 24-CV-6634, 2025 WL 3265230, at *3-4 & n.5 (E.D.N.Y. Nov. 24, 2025); *Trs. of the Pavers v. Atl. Steel Sols., LLC*, No. 22-CV-5047, 2023 WL 5152421, at *1 n.1 (E.D.N.Y. May 16, 2023).

The Complaint alleges that each collective bargaining agreement provides that defendant was required to pay contributions for related entities on whose behalf the benefit funds "serve as collection agents." Compl. ¶¶ 22, 28. Under each CBA, the employer is required to remit international and local union dues for each employee to the Fund Administrator "through the purchase of contribution receipts via electronic means under the Contribution Receipt System ('CRS')." Tile CBA, Art. XXVI, § 2; *id.* Art. IX, §§ 3(F), 4; Marble CBA, Art. VII, *id.* Art. XX ("Payment of all fringe benefits contributions set forth in Article XIX above, shall be made through the purchase of contribution receipts under the Contribution Receipt System ('CRS')."). In other words, the employer pays all amounts due under the collective bargaining agreement, in a lump-sum, to the Fund Administrator, who deposits the funds in a clearing account and allocates the payments according to Schedule A of the applicable collective bargaining agreement. *See, e.g.*, Tile CBA, Art. IX, § 4 ("the Union has agreed to indemnify and hold harmless the Trustees from any and all claims, actions and proceedings arising out of said payment"); Rate Schedules, Dkt. 13-3 ("Please remit via the CRS system . . . . Please make check payable to Local 7 Clearing Account."). The Court, therefore, finds that plaintiffs have standing to recover unpaid union dues. *See Toros Bros. Constr.*, 2025 WL 3265230, at *4 n.5; *Atl. Steel Sols.*, 2023 WL 5152421, at *1 n.1; *see generally Trs. of the Loc. 7 Tile Indus. Welfare Fund v. Kimo Tile & Marble, Ltd. Liab. Co.*, No. 23-CV-7377, 2026 U.S. Dist. LEXIS 154719, at *12 (E.D.N.Y. July 10, 2026) (awarding Trustees fringe benefit contributions and dues checkoffs), *report and recommendation adopted*, 2026 U.S. Dist. LEXIS 168886 (E.D.N.Y. July 29, 2026); *Top Stone & Tile Inc.*, 2025 WL 3461041, at *1 n.1 ("The Welfare Fund is also the 'designated collection agent' for the Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the 'Union'), which collects dues to the Union (the 'Dues Check-Off') and remittances to the Local 7 Tile Industry Political Action Committee (the 'Tile Industry Political Action Committee') and the Bricklayers and Allied Craftworkers Political Action Committee").

*also* 29 U.S.C. §§ 142, 186(c). Defendant was obligated to pay benefit contributions, union dues and other assessments pursuant to the CBAs and failed to do so. Compl. ¶ 35. Plaintiffs' uncontested allegations that defendant failed to remit dues to the Union and contributions to the Funds in violation of the CBAs are sufficient to establish defendant's liability under the LMRA. *See Cape Mount Heavy Constr.*, 2023 WL 5830338, at *4; *All Flooring Sols.*, 2020 WL 9814088, at *4; *see also Brown v. C. Volante Corp.*, 194 F.3d 351, 354 (2d Cir. 1999) (holding that employee benefit plans are permitted to bring suit under Section 301 of the LMRA to collect delinquent contributions, as well as interest). In light of the foregoing, this Court respectfully recommends granting default judgment on plaintiffs' ERISA and LMRA claims.

## V. Damages

While the allegations of a complaint concerning liability are deemed admitted upon entry of default, allegations relating to damages are not. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Rather, a court must ensure that there is an evidentiary basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Fustok*, 873 F.2d at 40 (noting that a court may rely on detailed affidavits and documentary evidence as the basis for determining damages to be awarded in a default judgment). "The court may determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment." *Zabrodin v. Silk 222,*

*Inc.*, 702 F. Supp. 3d 102, 113 (E.D.N.Y. 2023).

Plaintiffs have submitted in support of their motion declarations from the following individuals: William Hill, the President of the Tile Union and the Marble Union (Dkt. 13); Matthew Guy, an officer of the Marble Funds (Dkt. 14), and Michael Sarosy, a payroll auditor for the Funds (Dkt. 15). These declarations detail the calculation of defendant's delinquent contributions and union assessments as per the collective bargaining agreements, as well as calculations of interest and audit costs incurred. Further, plaintiffs have provided copies of the Funds' Collection Policies, along with the audit reports that form the basis for these calculations. Defendant has not submitted any opposition.

**A. Delinquent Contributions, Union Assessments, and Dues Check-Offs**

"An employer's failure to contribute an agreed upon amount to a benefit plan pursuant to a collective bargaining agreement is an ERISA violation creating a right of action for the benefits due." *Masino v. A to E, Inc.,* No. 07-CV-3462, 2009 WL 5184340, at *2 (E.D.N.Y. Dec. 21, 2009) (internal quotations and citations omitted). Section 1132(g)(2) authorizes the Funds to recover:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Section 1132(g) "thus creates a mandatory right to interest, liquidated damages, and attorney's fees in any case in which a judgment in favor of the plan is awarded." *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *5-6 (quoting *Masino*, 2009 WL 5184340, at

*2). To the extent that plaintiffs are entitled to damages under the CBA and its incorporated documents, but such relief falls outside the scope of ERISA, they may recover such amounts under the LMRA. *See* 29 U.S.C. § 185(a); *Argila v. FAC Constr. & Painting Corp.*, No. 24-CV-6340, 2026 WL 1207275, at *7 (E.D.N.Y. Apr. 30, 2026), *report and recommendation adopted*, 2026 WL 2256090 (E.D.N.Y. July 30, 2026); *All Flooring Sols.*, 2020 WL 9814088, at *6-7.

The Funds conducted an audit of defendant's books and records, but were largely limited to defendant's cash disbursement records reflecting payments with no payee information. *See* Sarosy Decl. ¶¶ 20, 31. As set forth in the Audit Report, the Funds' auditors determined that for the period January 1, 2017 through December 31, 2024, StoneAge failed to remit benefit contributions to the Tile Funds in the principal amount of $6,831,902.67 and to the Marble Funds in the principal amount of $149,042.10. Dkt. 20-1.

An audit is entitled to a presumption of correctness, which may be overcome only if "the employer can raise a genuine issue of material fact as to the accuracy of the calculations made by the plan." *Top Stone & Tile*, 2025 WL 3461041, at *7-8; *see Trs. of the New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Inniss Constr., Inc.*, No. 20-CV-6894, 2021 WL 2556130, at *3-4 (S.D.N.Y. May 13, 2021), *report and recommendation adopted*, 2021 WL 2555840 (S.D.N.Y. June 22, 2021); *All Flooring Sols.*, 2020 WL 9814088, at *8. Upon review of the Audit Report, and absent any opposition by the defaulting defendant, this Court recommends granting plaintiffs damages in the amount of **$6,831,902.67** in delinquent contributions owed to the Tile Funds, and **$149,042.10** in delinquent contributions owed to the Marble Funds. *See Kimo Tile*, 2026 U.S. Dist. LEXIS 154719, at *15-16; *Top Stone & Tile*, 2025 WL 3461041, at *7-8; *Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Eng'rs Loc. 14-*

*14B v. Cent. Enters., Inc.*, No. 11-CV-973, 2012 WL 4891564, at *3 & n.3 (E.D.N.Y. Oct. 15, 2012) (relying on audit report in granting summary judgment where "defendant has not challenged the accuracy of the audit or the validity of plaintiffs' claims"); *see also Bricklayers Ins. & Welfare Fund v. Verse Inc*., No. 12-CV-4271, 2013 WL 4883966, at *5 (E.D.N.Y. Sept. 11, 2013) (adopting report and recommendation that "credit[s] the audit as a sufficient basis to award damages").

**B. Interest on Unpaid Contributions as Determined by the Audit**

Under ERISA, plaintiffs are entitled to prejudgment interest on unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(B). ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Pursuant to the Tile Funds Collection Policy, the Funds' auditors calculated interest on behalf of the Local Funds at a rate of 10 percent per annum and on behalf of the International Funds at a rate of 15 percent per annum. *See* Hill Decl. ¶ 17; Sarosy Decl. ¶ 10; Tile Funds Collection Policy, Art. II, § 5. Under the Marble CBA and the Marble Collection Policy, if the Marble Funds bring legal action to collect amounts owed, the Marble Funds are entitled to interest on delinquencies at a rate of 10 percent per annum. *See* Marble CBA, Art. XX(6); Marble Collection Policy at 6; Guy Decl. ¶ 10.

Plaintiffs have submitted the audit report and updated calculations of interest on unpaid contributions. As per the Tile Collection Policy, the Funds' auditors calculated interest on the delinquent contributions through September 30, 2025, in the amount of **$1,934,976.99**. *See* Dkt. 20-1. As per the Marble CBA, the Funds' auditors calculated interest on the delinquent contributions through September 30, 2025, in the amount of **$76,234.13**. *Id.* The Court accepts the audit's presumption of correctness and recommends awarding interest in the amounts sought.

*See Kimo Tile*, 2026 U.S. Dist. LEXIS 154719, at *17-18; *Top Stone & Tile*, 2025 WL 3461041, at *8.

### C. Interest Calculated to the Entry of Judgment

Plaintiffs also seek interest on the delinquent contributions from September 30, 2025 until the entry of judgment. *See* Pls.' Mem. at 20; [Proposed] Default J., Dkt. 20-2.[6] The Court calculates interest as follows. Applying the Tile Collection Policy, the Court calculates interest on delinquent contributions to the Local Tile Funds at a rate of 10 percent and interest on delinquent contributions to the International Tile Funds at a rate of 15 percent. *See* Hill Decl. ¶ 17. Accordingly, the Court recommends awarding additional interest at the rate of $1,589.11 per day for the Tile Funds ($5,800,247.24 x 10 percent / 365 days) and $423.97 per day for the International Funds ($1,031,655.43 x 15 percent / 365 days), for a total of **$2,013.08 per day to the Tile Funds**. Applying the Marble Funds Collection Policy, the Court calculates interest on delinquent contributions to the Marble Funds at a rate of 10 percent. *See* Guy Decl. ¶ 10; Pls.' Mem. at 13; Marble Collection Policy at 5-6. Accordingly, the Court recommends awarding additional interest at a rate of **$40.83 per day for the Marble Funds**.

### D. Interest on Late Payments

Plaintiffs determined that defendant failed to submit timely benefit contributions to the Marble Funds, for the periods January 1, 2023 through December 31, 2023 and January 1, 2024 through December 31, 2024. Guy Decl. ¶¶ 18-19; Dkts. 14-4, 14-5. As a result, under the Marble Collection Policy, StoneAge accrued interest on the late paid contributions at the annual rate of 10 percent of the delinquency, resulting in the accrual of late payment interest in the

[6] Although the proposed judgment seeks interest from August 13, 2025, plaintiffs updated their interest calculations up to September 30, 2025. *Compare* Dkt. 20-1, *with* Dkt. 20-2.

amount of $9,270.05. Guy Decl. ¶¶ 18-19; Dkts. 14-4, 14-5; Pls.' Mem. at 15.[7] Plaintiffs provided documents which indicate the months for which contributions were paid late, the dates on which plaintiffs received the contributions, and the late payment charges that were assessed. *See* Dkts. 14-4, 14-5. Having reviewed plaintiffs' calculations and supporting documentation, the Court respectfully recommends awarding plaintiffs interest for the late payments in the amount of **$9,270.05**. *See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, & Skill Improvement & Saftey Funds v. Genrus Corp.*, No. 20-CV-1837, 2022 WL 4586316, at *5 (E.D.N.Y. June 14, 2022), *report and recommendation adopted*, 2022 WL 4586348 (E.D.N.Y. Sept. 29, 2022); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp.*, No. 19-CV-2312, 2020 WL 1668041, at *7 (E.D.N.Y. Mar. 5, 2020), *report and recommendation adopted*, 2020 WL 1666461 (E.D.N.Y. Apr. 3, 2020).

### E. Liquidated Damages

Section 502 of ERISA provides for liquidated damages in an amount equal to the greater of the interest due on the unpaid contributions, or up to twenty percent of the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2). Under the LMRA, liability for liquidated damages stems from the CBAs and Collection Policies. *See All Flooring Sols.*, 2020 WL 9814088, at *11.

Pursuant to the CBAs and Collection Policies, the Funds are entitled to liquidated damages at a rate of 20 percent of the contributions owed to the Funds. *See, e.g.*, Tile CBA, Art. IX, § 3(L), 5(G); Tile Collection Policy, Art. II, § 5; Marble Collection Policy at 2, 4, 6.

[7] The Marble Collection Policy provides that for late payments, "[i]nterest will accrue at the rate of three percent (3%) plus prime, not to exceed ten percent (10%) per annum." Marble Collection Policy at 3; *see* Compl. ¶ 33. During the relevant period, the prime rate exceeded 7 percent. *See* History of the U.S. (Fed) Prime Rate, https://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm.

Plaintiffs seek liquidated damages of $1,203,078.60[8] with respect to the Tile Funds and $29,808.42 with respect to the Marble Funds. *See* Pls.' Mem. at 15; Guy Decl. ¶ 15; Sarosy Decl. ¶ 24. As discussed above, the Court accepts the audit's presumption of correctness. This Court respectfully recommends awarding plaintiffs liquidated damages based on the Audit of **$1,203,078.60** with respect to the Tile Funds, and **$29,808.42** with respect to the Marble Funds. *See Kimo Tile*, 2026 U.S. Dist. LEXIS 154719, at *17-18 (relying on audit's presumption of correctness); *Top Stone & Tile*, 2025 WL 3461041, at *9 (same).

### F. Audit Costs

Plaintiffs seek audit fees of $6,400.00 for the Tile Funds and $6,400.00 for the Marble Funds, for the audit. Sarosy Decl. ¶¶ 36, 38; Pls.' Mem. at 15. Courts may award "such other legal or equitable relief as the Court deems appropriate," 29 U.S.C. § 1132(g)(2)(E), and regularly award reasonable audit costs. *See, e.g.*, *Top Stone & Tile*, 2025 WL 3461041, at *10; *All Flooring Sols.*, 2020 WL 9814088, at *12. [R]equests for audit fees must be supported by records . . . sufficient to allow the court to determine the reasonableness of the audit costs." *Trs. of Steamfitters' Local Union No. 638 Welfare Fund v. Nexus Mech., Inc.*, No. 08-CV-3214, 2014 WL 1338377, at *8 (E.D.N.Y. Apr. 2, 2014) (internal quotations omitted). "The evidence in support of recovering audit fees must include, at a minimum, some breakdown of the auditors' rates charged and hours expended." *Gesualdi v. Diversified Carting, Inc.*, No. 10-CV-2561, 2014 WL 5475357, at *3 (E.D.N.Y. Oct. 29, 2014) (internal quotations omitted).

Under the Collection Policies governing the Funds, plaintiffs are entitled to recover any expenses incurred in determining the amount of a delinquency, including reasonable audit and

[8] Plaintiffs appear to assess liquidated damages only for the Funds that are covered by ERISA. *See All Flooring, Sols.*, 2020 WL 9814088, at *11.

accounting expenses. Tile Collection Policy, Art. II, § 5; Marble Collection Policy at 5-6. According to Mr. Sarosy, who conducted the audit, the auditors spent 160 hours preparing the Audit Report at an hourly rate of $80, for a total of $12,800.00. Sarosy Decl. ¶¶ 36, 38.

Plaintiffs have shown satisfactorily that they incurred audit costs, and this Court respectfully recommends awarding **$6,400 with respect to the Tile Funds** and **$6,400 with respect to the Marble Funds**. *See Top Stone, & Tile*, 2025 WL 3461041, at *10 (awarding audit fees at rate of $80 per hour); *All Flooring Sols.*, 2020 WL 9814088, at *12.

### G. Post-Judgment Interest

"The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)); *see Indu Craft, Inc. v. Bank of Baroda*, 87 F.3d 614, 619 (2d Cir. 1996) (prevailing party is entitled to post-judgment interest as a matter of right). The post-judgment interest rate is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

Here, plaintiffs seek an award of post-judgment interest in accordance with 28 U.S.C. § 1961. Pls.' Mem. at 19. This Court recommends awarding plaintiffs post-judgment interest, to be calculated in accordance with 28 U.S.C. § 1961 from the date of the entry of judgment to the date of payment.

## VI. Attorneys' Fees and Costs

Plaintiffs seek to recover their attorneys' fees and costs in this action. Pls.' Mem. at 16-19. Plaintiffs are entitled to an award of "reasonable attorney's fees and costs" under ERISA and

the applicable CBAs. *See* 29 U.S.C. § 1132(g)(2)(D); *Iron Workers Dist. Council of W. New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1505-06 (2d Cir. 1995). An award of attorney's fees and court costs is appropriate under the LMRA, pursuant to the parties' contractual obligations under the CBAs and Collection Policies. *See Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Antonelli Masonry, Inc.*, No. 18-CV-11127, 2019 WL 1755413, at *4 (S.D.N.Y. Apr. 19, 2019).

Under Second Circuit precedent, courts calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects what "a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008) (internal quotations omitted). The "presumptively reasonable fee" is historically known as the "lodestar." *Id.* at 183. The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged. *See Savoie v. Merchs. Bank*, 166 F.3d 456, 463 (2d Cir. 1999); *N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). The movant is required to submit "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done" in support of fee petitions. *See Carey*, 711 F.2d at 1148. "Failure to do so results in denial of the motion for fees." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992).

District courts may exercise broad discretion in determining the reasonableness of an attorneys' fee petition. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019),

*report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020). Courts often consider case-specific factors including the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citation omitted).

Courts evaluate the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits. *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174-76 (2d Cir. 2009). "Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community." *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc.*, No. 18-CV-0126, 2019 WL 3937126, at *14 (E.D.N.Y. July 3, 2019) (citing *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005)).

"Typical hourly rates in the Eastern District of New York in the ERISA context are $300 to 450 per hour for partners, $200 to $300 per hour for senior associates, $100 to $200 per hour for junior associates, and $70 to $100 per hour for paralegals." *Top Stone & Tile*, 2025 WL 3461041, at *10 (internal quotation marks and citation omitted); *see Dermansky v. Telegraph Media, LLC*, No. 19-CV-1149, 2020 WL 1233943, at *7 (E.D.N.Y. Mar. 13, 2020) ("The ordinary rates for attorneys in the Eastern District of New York are "approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates."). The Court should be mindful that cases of default are "relatively simple legal matters," but courts can still take an attorney's skill in a specialized field into account. *See*

*Sheldon v. Plot Com*., No. 15-CV-5885, 2016 WL 5107072, at *19 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016).

The next step in awarding attorneys' fees is determining the reasonableness of the number of hours expended by counsel. In reviewing a fee application, the court should exclude "excessive, redundant, or otherwise unnecessary" hours. *See Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). The court should examine each entry "with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997). If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).

Here, plaintiffs seek $6,382.00 in attorneys' fees and $489.29 in costs, for a total of $6,871.29. Pls.' Mem. at 16-19; Billing Records, Dkts. 16-6, 16-7. One partner, Maura Moosnick, and one associate attorney, Lillianna Iorfino, at Virginia & Ambinder, LLP ("V&A"), along with several paralegals, worked on the case. Each billed at different hourly rates with respect to work performed in connection with the Tile Funds and the Marble Funds. Ms. Moosnick, a 2021 law school graduate, billed $450 per hour for work with respect to the Tile Funds and $390 per hour for work with respect to the Marble Funds. *See* Decl. of Lillianna Iorfino ("Iorfino Decl.") ¶ 12, Dkt. 16. Ms. Iorfino, also a 2021 law graduate, billed $340 per hour for work with respect to the Tile Funds and $290 per hour for work with respect to the Marble Funds. *Id.* ¶ 11. Several paralegals billed at $160 per hour for work with respect to the Tile Funds and at a rate of $130 per hour for work with respect to the Marble Funds. *Id.* ¶¶ 13-15.

Plaintiffs have submitted time records that indicate the date, duration, and nature of the

work performed by their counsel. *See* Billing Records, Dkts. 16-6, 16-7. The rates requested by counsel are on the higher end of the range usually awarded to similarly experienced attorneys in ERISA matters in this District. While this Court finds Ms. Iorfino's rate to be reasonable, Ms. Moosnick's rate is excessive. Both attorneys graduated law school in 2021, notwithstanding Ms. Moosnick's title as partner. "[I]n the context of attorney's fees awards, one's title is not the dispositive inquiry; rather, it is one's experience, *i.e.*, skill and expertise, that weighs in favor of awarding a requested hourly rate." *Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2022 WL 16755146, at *3 (E.D.N.Y. Sept. 15, 2022) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2022 WL 4596735 (E.D.N.Y. Sept. 30, 2022).

Given counsel's experience, this Court respectfully recommends awarding attorneys' fees for Ms. Moosnick at the rate of **$340 per hour** and for Lillianna Iorfino at the rates of **$340 per hour for work with respect to the Tile Funds** and **$290 per hour for work with respect to the Marble Funds**. *See Restrepo v. Dynamic Fire, Inc.*, 819 F. Supp. 3d 158, 178-79 (E.D.N.Y. 2026) (reducing V&A partner rate to $330 per hour); *Toros Bros. Constr.*, 2025 WL 3265230, at *11 (approving blended rate of $333 per hour for V&A attorneys); *Trs. of N. Atl. States Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Cooperation Funds v. Dame Contracting, Inc.*, No. 23-CV-5254, 2024 WL 2293831, at *7 (E.D.N.Y. May 21, 2024) (awarding Ms. Moosnick $275 per hour); *Genrus Corp.*, 2022 WL 4586316, at *6 (approving requested rate of $250 per hour for V&A partner and associate).

In addition, this Court considers the rate of $130-$160 per hour for paralegals to be unreasonably high in the context of this case. Accordingly, this Court respectfully recommends a modest reduction of the rate for paralegals to **$120 per hour**. *See Top Stone & Tile*, 2025 WL 3461041, at *10 (reducing paralegal rate to $100 per hour); *Restrepo v. Dynamic Fire, Inc.*, No.

25-CV-2079, 2025 WL 3057385, at *14 (E.D.N.Y. Nov. 3, 2025) (recommending reduced rate of $120); *Genrus*, 2022 WL 4586316, at *6 (recommending $100 per hour).

Turning next to the reasonableness of time expended, the Court finds that it was reasonable for counsel to devote 21.8 hours of work to this case. The amount of time spent is within a reasonable range of time to prepare a complaint and motion for default judgment, particularly one requiring plaintiffs' counsel to review extensive records and prepare a number of detailed declarations. *See Top Stone & Tile*, 2025 WL 3461041, at *10 (finding reasonable 18 hours of work); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp.*, No. 20-CV-1834, 2022 WL 584536, at *10 (E.D.N.Y. Feb. 3, 2022) (awarding V&A fees for 39.4 hours of work in a similar ERISA action), *report and recommendation adopted*, 2022 WL 580959 (E.D.N.Y. Feb. 24, 2022); *Shelbourne Constr. Corp.*, 2020 WL 1668041, at *9 (awarding V&A fees for 45.30 hours of work in a similar ERISA action). Applying the reduced hourly rates described above, this Court respectfully recommends awarding plaintiffs **$6,182.00** in attorneys' fees based on the following calculations:

| | Tile Hours worked | Tile Hourly rate | Tile Total | Marble Hours Worked | Marble Hourly rate | Marble Total | Combined Total |
|---|---|---|---|---|---|---|---|
| Ms. Iorfino | 9.7 hours | $340 per hour | $3,298.00 | 7 hours | $290 per hour | $2,030.00 | $5,328.00 |
| Ms. Moosnick | .65 hours | $340 per hour | $221.00 | .45 hours | $340 per hour | $153.00 | $374.00 |
| Paralegals | 2.2 hours | $120 per hour | $264.00 | 1.8 hours | $120 per hour | $216.00 | $480.00 |
| **Total** | | | **$3,783.00** | | | **$2,399.00** | **$6,182.00** |

Finally, plaintiffs seek $489.29 in costs, including the filing fee, service fees and postage. *See* Iorfino Decl. ¶ 20; Dkt. 16-8. Plaintiffs are entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotations and citation omitted); 29 U.S.C. § 1132(g)(2)(D). This Court finds plaintiffs' costs to be reasonable, and respectfully recommends awarding plaintiffs **$489.29** in costs.

**Conclusion**

For the foregoing reasons, this Court respectfully recommends **granting**, in large part, plaintiffs' motion for default judgment against defendant StoneAge LLC on plaintiffs' ERISA and LMRA claims, and awarding plaintiffs the following relief:

(1) Delinquent contributions of **$6,831,902.67** to the Tile Funds, interest thereon of **$1,934,976.99**, liquidated damages of **$1,203,078.60**, as set forth in the Audit Report, and audit fees of **$6,400**;

(2) Delinquent contributions of **$149,042.10** to the Marble Funds, interest thereon of **$76,234.13**, liquidated damages of **$29,808.**42, as set forth in the Audit Report, and audit fees of **$6,400**;

(3) Additional interest on delinquent contributions owed to the Tile Funds in the amount of **$2,013.08 per day**, to be calculated by the Clerk of Court, from September 30, 2025 until the entry of judgment; and additional interest on delinquent contributions owed to the Marble Funds in the amount of **$40.83 per day,** to be calculated by the Clerk of Court, from September 30, 2025 until the entry of judgment;

(4) Late payment interest of **$9,270.05** owed to the Marble Funds for the periods

January 1, 2023 through December 31, 2023 and January 1, 2024 through December 31, 2024;

(5) Post-judgment interest calculated at the statutory rate; and

(6) Attorneys' fees of **$6,182.00** and costs of **$489.29**.

A copy of this Report and Recommendation is being electronically served on counsel. Further, this Court directs plaintiffs' counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail on defendant at its last known address, and by email at valentin@stoneage.nyc. Plaintiffs shall file proof of service on ECF by **August 25, 2026**.

Any objections to the recommendations made in this Report must be filed with the Honorable Frederic Block within 14 days after the filing of this Report and Recommendation and, in any event, on or before **September 3, 2026**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

**SO ORDERED**

Dated: Brooklyn, New York
August 20, 2026

s/ James R. Cho
James R. Cho
United States Magistrate Judge